**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Donald J. HEDGE,**
**Defendant–Appellant.**

No. 56622.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 12, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 1990.

Application to Transfer Denied
Sept. 11, 1990.

Thomas S. Richardson, Jr., St. Louis, Stormy White & John R. Krehmeyer, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Christine A. Alsop, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Donald Hedge, appeals from his convictions, after a jury-waived trial, of one count of stealing, Section 570.030.3, RSMo (1986), and of two counts of tampering with a witness, Section 575.270, RSMo (1986). He was sentenced to three concurrent three year terms of imprisonment. We affirm.

Defendant challenges the sufficiency of the evidence to support his convictions.

Unlike the trial court, we do not weigh the evidence; we determine only whether there was sufficient proof from which the trial court could reasonably have found defendant guilty. *State v. Hood*, 680 S.W.2d 420, 423 (Mo.App.1984). In making that determination, we accept as true all evidence tending to prove defendant's guilt, together with all reasonable inferences therefrom favorable to the State; and disregard all contrary evidence and inferences. *Id.*

The evidence, viewed in this light, establishes that at approximately three a.m. on July 14, 1988, defendant telephoned Dorothy Ramas (victim) and requested $2,000. Victim refused and defendant threatened that, if he didn't get the money, he would put her "out of commission." Later that day, at about three p.m., a neighbor, Cathy Austin, observed defendant driving away in victim's 1976 Ford Grenada which was parked behind victim's condominium in Lemay, Missouri. Although defendant had been acquainted with victim for about seven years and had driven her automobile on numerous occasions, he did not have permission to use her car at that time. On July 18, 1988, victim's automobile was discovered vandalized. On July 19, 1988, defendant called victim. He told her that he had not stolen her car; but that if he had, the car "would definitely be ... worse."

On September 12, 1988, defendant telephoned Barbara Byrd, victim's daughter. By that time, he had been charged with stealing a motor vehicle. Ms. Byrd testified as follows:

[Prosecutor]: Tell us, specifically, what he said to you that day.

[Ms. Byrd]: Just, you know, like he was going to kill us, none of us would ever live to see him in a stand [sic] or, you know, it didn't matter he would get me in a grocery store or anywhere, my yard, my work.

[Prosecutor]: Describe the tone of voice he had on this morning.

[Ms. Byrd]: Very violent—very violent. He meant it.

\* \* \* \* \* \*

[Prosecutor]: You said, "He made some threats to us." Who did he make threats to specifically, if any?

[Ms. Byrd]: My mom, my sister, Cathy Austin, her three children, me, Charlie Rossi [Ms. Byrd's fiancee] and my son.

On the evening of September 22, 1988, defendant twice telephoned Ms. Byrd's home. On these two occasions, Ms. Byrd's fiancee, Charles Rossi, answered. Although Ms. Byrd was at home, Rossi spoke with defendant. The first time he called, defendant told Rossi that Rossi "was a dead M.F." The second time he telephoned, defendant warned that "before he goes to the pen there will be somebody laid down and die [sic] for him." This conversation was tape recorded. Ms. Byrd also summoned a police officer, who was present during the last part of the taped conversation and who then confiscated the tape for evidentiary purposes. The tape was played at trial.

At about 8:30 p.m. that same evening, another police officer observed defendant using a public telephone which was located in a commuter parking lot. When defendant saw the police car, he dropped the telephone, walked toward the front of his truck, and stooped down out of view of the officer. The officer approached defendant, who explained that he was checking his tire. Defendant was arrested when the police officer discovered that there was a warrant out for defendant's arrest.

Defendant testified at trial. He denied stealing the automobile as well as making the threatening telephone calls. His defense was alibi.

In his first two points on appeal, defendant claims that the evidence was insufficient to support his convictions of two counts of tampering with a witness. Section 575.270 provides in pertinent part:

1. A person commits the crime of "tampering with a witness" if, with purpose to induce a witness or a prospective witness in an official proceeding to disobey a subpoena or other legal process, or to absent himself or avoid subpoena or other legal process, or to withhold evidence, information or documents, or to testify falsely, he:

(1) Threatens or causes harm to any person or property; or

(2) Uses force, threats or deception; or

(3) Offers, confers or agrees to confer any benefit, direct or indirect, upon such witness; or

(4) Conveys any of the foregoing to another in furtherance of a conspiracy.

This case involves the construction of a criminal statute, which must be strictly construed against the state. The court must, however, interpret the intent of the legislature in enacting the statute under consideration. The rule of strict construction does not require that the court ignore either common sense or evident statutory purpose. *State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. banc 1989); *State v. Ballard*, 294 S.W.2d 666, 669 (Mo.App.1956).

Chapter 575 is entitled "Offenses Against the Administration of Justice." The sections contained therein have as their purpose the promotion of the orderly administration of justice. *See Ballard*, 294 S.W.2d at 669–670. Anything which obstructs the procurement of witnesses, or, once procured, which hinders their freedom and willingness to speak the truth before any court or body charged with the enforcement of our laws, civil or criminal, is an offense against the administration of justice and is within the contemplation of Chapter 575. *See Id.* at 670.

Defendant first argues that, although the information charging him with tampering on September 22, 1988, named Ms. Byrd as the victim, the threats made on September 22, were not directed to her but to Charles Rossi. On appeal, defendant concedes that the September 22 telephone conversation, which was tape recorded, included remarks concerning Ms. Byrd.

Section 575.270.1 does not require that defendant's threats be made directly to Ms. Byrd. In this case, whether defendant directly communicated the threats to Ms. Byrd is irrelevant. Ms. Byrd was present when defendant was talking to her fiancee and eventually heard defendant's remarks. She experienced the same fearful reaction as if she had heard the threats

from defendant personally. The obvious purpose of defendant's conduct was to discourage Ms. Byrd from testifying against him. Defendant's conduct was the type which the statute seeks to deter and to punish. There was sufficient evidence to support defendant's conviction of tampering with a witness on September 22, 1988. Defendant's first point is denied.

Defendant next challenges the sufficiency of the evidence to support his tampering conviction arising out of the September 12, 1988, incident. He argues that Ms. Byrd, the named victim in the tampering charge, was not a witness to the underlying crime of stealing.

For purposes of Chapter 575, a witness is defined as one "[h]aving knowledge of the existence or nonexistence of facts relating to any crime...." Section 575.010.10, RSMo (1986). Section 575.270.1 therefore does not require that the threatened witness also be an eyewitness to the underlying crime. Although Ms. Byrd did not witness the original crime of stealing, she had first-hand knowledge of the threats made against her and against her family. Evidence of threats by defendant toward Ms. Byrd were relevant to establish defendant's guilt on the original charge of stealing. *See State v. Chunn,* 701 S.W.2d 578, 585 (Mo.App.1985). Such evidence was admissible as showing defendant's consciousness of guilt. *See Id.* There was sufficient evidence to support defendant's conviction of tampering with a witness on September 12, 1988. Defendant's second point is denied.

In his third point, defendant challenges the sufficiency of the evidence to support his conviction of stealing. No jurisprudential purpose would be served by a written opinion on this point. Defendant's third point is denied pursuant to Rule 30.25.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.