

# Missouri Court of Appeals

## Southern District
### Division Two

STATE OF MISSOURI,               )

                                     )

     Plaintiff-Respondent,      )

                                     )

vs.                                )     No. SD33644

                                     )

TIMOTHY F. PLOPPER,       )     Filed March 31, 2016

                                     )

     Defendant-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack A. L. Goodman, Circuit Judge

<u>AFFIRMED</u>

A jury found Timothy F. Plopper ("Defendant") guilty of tampering with a witness, *see* section 575.270, and tampering in the first degree, *see* section 569.080.[1]  On appeal, Defendant claims that there is insufficient evidence to support his convictions.  Finding no merit in Defendant's claims, we affirm.

### **Standard of Review**

> In reviewing a claim that there was not sufficient evidence to sustain a criminal conviction, this Court does not weigh the evidence but, rather, accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence and inferences.  This Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty.

*State v. Claycomb*, 470 S.W.3d 358, 362 (Mo. banc 2015) (internal quotation marks and citations omitted).  "The Court may 'not supply missing evidence, or give the [State] the benefit of unreasonable,

---

[1] References to statutes are to RSMo Cum.Supp. 2010, unless otherwise indicated.

1

speculative or forced inferences.'" ***State v. Whalen***, 49 S.W.3d 181, 184 (Mo. banc 2001) (quoting

***Bauby v. Lake****,* 995 S.W.2d 10, 13 n.1 (Mo.App. 1999)).

"[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or

none of the testimony of a witness when considered with the facts, circumstances and other testimony in

the case." ***State v. Freeman***, 269 S.W.3d 422, 425 (Mo. banc 2008) (internal quotation marks and

citations omitted). It is the State's burden to prove each and every element of a criminal case. ***State v.***

***Love***, 134 S.W.3d 719, 722 (Mo.App. 2004). "The State may prove its case by presenting either direct or

circumstantial evidence connecting the defendant to each element of the crime." ***State v. Jones***, 296

S.W.3d 506, 509 (Mo.App. 2009). Upon appellate review, "[c]ircumstantial evidence is given the same

weight as direct evidence and the jury is free to make reasonable inferences from the evidence

presented." ***Id.***

## Factual and Procedural Background

On February 20, 2011, Corporal Kelsey Rutledge began an investigation because "an individual"

had come to Antonio Reyes's residence in Stotts City and "displayed a firearm, pointed at Mr. Reyes and

threatened to kill him." The individual accused Reyes of killing his dog. Upon investigation, Corporal

Rutledge determined that this individual was Thomas Plopper.[2] Thomas and Defendant, who are

brothers, lived across the street from Reyes's home. Thomas was arrested, and felony charges were filed

against him. These charges caused Defendant and his brother emotional distress.

On July 18, 2011, Reyes was sitting outside his home when Defendant, unknown to Reyes at that

time, approached and said "you need to go and change your testimony." Reyes responded that he would

not lie, and Defendant said, "[W]ell there are going to be consequences be prepared." According to

Corporal Rutledge, Defendant "threatened [Reyes], instructed him he was to change his testimony in the

---

[2] Because Thomas Plopper shares the same last name as Defendant, we refer to him by his first name. No disrespect is
intended.

court proceedings against Thomas Plopper and that if Mr. Reyes did not change his testimony . . . there would be violent consequences."

Two days later, on July 20, someone used an accelerant to set fire to Reyes's minivan that was parked outside of his residence. Deputy Joshua Osterloh, who had been called to an emergency at the house next door, noticed the vehicle fire at the Reyes home as he arrived. He grabbed his fire extinguisher from his patrol car and put out the fire. Because the fire became a "grade large fire quickly," Deputy Osterloh believed it had been deliberately set and asked dispatch to send the fire marshal. Investigator Robbie Sterner from the State Fire Marshal's Office, determined that the fire had been set because there "appeared to be an ignitable pour pattern" from gasoline or some other accelerant.

After Deputy Osterloh's investigation of the fire scene concluded, approximately two to three hours after his arrival at the scene, he responded to another call of a "vehicle backed off into a field area off the road" approximately a "mile and a half west of Stotts City." In the driver's seat of that vehicle, Deputy Osterloh found Defendant looking "like he was asleep or passed out in the driver's seat." Deputy Osterloh noted that the hood of the vehicle was cool to the touch as though it "had been sitting there a while." When Deputy Osterloh asked Defendant why he was there, Defendant responded that his truck had overheated so he stopped there for approximately thirty minutes. There was an almost empty five-gallon gas can in the back of the truck.

Based on this information, Corporal Rutledge contacted the Missouri Information Analysis Center ("MIAC") and asked them to generate a photo line up to include a picture of Defendant. The MIAC generates a photo lineup using the suspect's photo and other individuals of a similar appearance. Corporal Rutledge showed Reyes the photo lineup, and Reyes identified Defendant as the "man that came to my house" on July 18 "threatening him, demanding that he change his testimony." Reyes also identified Defendant in person at trial as this man.

Defendant gave varying accounts of his whereabouts on the morning of July 20. In one account, he was camping "over in – by Fairview and Wheaton" with his "sister, her ol' man, and nephew, four or

3

five of us." Defendant later stated that he was camping at Pioneer. Defendant also testified that he was camping in Hoberg. According to Defendant, he left the camping site to take his sister's husband to a job interview at "the feed place outside of Stotts City" but his "car overheated on the way to Stotts City to get him." Defendant first testified that he left the camping site at 6:30 that morning. Then, following the prosecutor's observation that he would have been unable to reach the location outside of Stotts City where Deputy Osterloh found him if he left at that time, Defendant revised his testimony saying that it was "about daylight when I left 5:30, 5:00, maybe 6:00."

The jury found Defendant guilty of tampering with a witness and tampering in the first degree. The trial court sentenced Defendant to seven years' imprisonment in the Department of Corrections for each count with those sentences to run consecutively to each other. Defendant's motion for a new trial was denied, and this appeal timely followed.

## Discussion

### *Point One—Tampering with a Witness Conviction Supported by Sufficient Evidence*

Defendant's first point states:

> The trial court erred in overruling the defense's motions for judgment of acquittal as to Count I, tampering with a witness *because* (a) when an information specifies the method in which a crime was committed, the prosecution must prove that specific method beyond a reasonable doubt, (b) to constitute a crime, a "threat" must be objectively intelligible as a threat of violence, and (c) a subjective belief that vague terms meet this is insufficient to prove so beyond a reasonable doubt *in that* Count I of the information charged that Timothy Plopper had tampered with Antonio Reyes by "threatening" him, but Mr. Reyes testified only that Timothy had told him "there will be consequences be prepared" and he "took this as a threat," failing to satisfy the State's burden.

Defendant's argument clarifies that he is asking us to review the sufficiency of the evidence to support his conviction because Defendant did not "threaten" Reyes as contemplated by section 575.270.[3]

---

[3] Part of Defendant's argument contends that there was insufficient evidence that he threatened Reyes because the statement "there will be consequences be prepared" does not constitute a "true threat" for First Amendment reasons. Whether his statements constitute a true threat is an issue of law that would ordinarily be reviewed *de novo*; however, the argument hinges on an alleged constitutional violation that was not raised below and is therefore waived. **State ex rel. York v. Daugherty**, 969

4

The overall purpose of Chapter 575 is to promote the orderly administration of justice by proscribing "[a]nything which obstructs the procurement of witnesses, or, once procured, which hinders their freedom and willingness to speak the truth before any court or body charged with the enforcement of our laws, civil or criminal[.]" *State v. Hedge*, 793 S.W.2d 478, 480 (Mo.App. 1990). Section 575.270.1 provides:

> 1. A person commits the crime of tampering with a witness if, with purpose to induce a witness or a prospective witness to disobey a subpoena or other legal process, or to absent himself or avoid subpoena or other legal process, or to withhold evidence, information or documents, or testify falsely, he:
>
> (1) Threatens or causes harm to any person or property; or
> (2) Uses force, threats or deception; or
> (3) Offers, confers or agrees to confer any benefit, direct or indirect, upon such witness; or
> (4) Conveys any of the foregoing to another in furtherance of a conspiracy.

Defendant argues that the State failed to prove that Defendant "threatened" Reyes because his statement that "there are going to be consequences be prepared" was not "objectively intelligible as presently threatening violence beyond a reasonable doubt." This argument presupposes, however, that Reyes' trial testimony is the only evidence in the record as to what Defendant said in the encounter with Reyes that could be understood as a threat. It was not.

In a footnote in his initial brief, Defendant acknowledges, but then attempts to completely discount the probative value of Corporal Rutledge's trial testimony that Defendant told Reyes there would be "violent consequences" because it

> was merely hearsay, only admissible in the first place because Mr. Reyes, himself, was available to testify and, in fact, did testify. *State v. Link*, 25 S.W.3d 136, 145 (Mo. banc 2000). What Corporal Rutledge said he (self-servingly) remembered Mr. Reyes saying Timothy said does not matter when Mr. Reyes took the stand himself to testify what Timothy said. *Id.*

Defendant did not object to Corporal Rutledge's statement when it was made at trial and concedes, in his reply brief, that the statement was properly admitted into evidence. Even though properly admitted into evidence without objection, however, Defendant contends that Reyes's testimony

S.W.2d 223, 224 (Mo. banc 1998). If Defendant believed that his words were improperly criminalized, he was required to make that argument to the trial court, and his failure to do so preserves nothing for our review.

supplants Corporal Rutledge's testimony because the words were originally spoken by Reyes and Corporal Rutledge could only "self-servingly" testify to what Reyes reported. We disagree for two reasons.

First, Defendant fails to ascribe any meaning to the designation of "self-servingly," fails to demonstrate how Corporal Rutledge's statement satisfies that designation, and fails to cite any authority as to why such a statement, even if "self-servingly" made, would not be probative as to the making of a threat.

Second, Defendant's only cited authority, *State v. Link*, 25 S.W.3d 136, 145 (Mo. banc 2000), does not address in any manner or offer any support for his argument that Reyes's testimony supplants Corporal Rutledge's testimony. Rather, Corporal Rutledge's testimony was evidence in the case for all purposes. "It is axiomatic that an objection to evidence must be made and adversely ruled in order to preserve error. Evidence introduced without objection is in the case for all purposes and constitutes evidence, the probative value of which is for the jury." *State v. Sammons*, 640 S.W.2d 488, 489 (Mo.App. 1982) (citations omitted). The jury was free to believe that Reyes's statement about what Defendant said to him in their encounter made to Corporal Rutledge shortly after that encounter was more credible than Reyes's trial testimony given long after the encounter. *See Freeman*, 269 S.W.3d at 425.

Defendant's statement, as testified to by Corporal Rutledge, that Reyes should be prepared for "violent consequences" if he did not change his testimony in the case against Defendant's brother was sufficient evidence for a reasonable juror to conclude beyond a reasonable doubt that Defendant threatened Reyes in violation of section 575.270. Defendant's first point is denied.

### *Point Two—Tampering Conviction Supported by Sufficient Evidence*

Defendant's second point states:

The trial court erred in overruling the defense's motions for judgment of acquittal as to Count II, tampering in the first degree *because* to be reasonable, an inference cannot depend on another inference, and the State failed to introduce sufficient evidence to prove

each element of the charge beyond a reasonable doubt *in that* there was no eyewitness, forensic, or other evidence that Timothy Plopper destroyed Antonio Reyes' minivan, and the State's "evidence" on this charge amounted merely to probability, speculation, and inference-stacking.

Section 569.080 provides: "A person commits the crime of tampering in the first degree if. . . [h]e or she knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile . . . without the consent of the owner thereof." "An essential element of any crime is that the person charged with an offense is the person who committed the offense[.]" *State v. Graves*, 358 S.W.3d 536, 539-40 (Mo.App. 2012) (citing *State v. Murphy*, 415 S.W.2d 758, 760 (Mo. banc 1967)). Defendant challenges the sufficiency of the evidence supporting that he was the person who committed the offense of tampering with Reyes's van as charged.

Initially, we note that Defendant's statements in his point that "an inference cannot depend on another inference," and his reference to inference-stacking hark back to the circumstantial evidence rule that "originated as a higher standard to which circumstantial evidence cases were held." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). Indeed, Defendant cites numerous cases that he believes are factually similar and support a finding in this case that there is insufficient evidence; however, almost all of those cases predate *Grim*. In *Grim*, our supreme court rejected the circumstantial evidence rule as a standard for reviewing the sufficiency of the evidence, recognizing that the "circumstantial evidence rule provides no more guidance" than the standard of review for cases involving direct evidence, "and a reviewing court, or a juror, must simply decide whether the theory presented is reasonable." *Id.* at 406. The cases cited by Defendant relying on the circumstantial evidence rule, therefore, offer little, if any, analytical or persuasive value, and we will not address them.[4]

Defendant argues that the State's case was based on "inference stacking" and likens this case to a littering case in which evidence of a bag of trash on the roadside with mail addressed to the defendant was not enough to infer that the defendant put it there, citing *State v. Waller*, 163 S.W.3d 593, 596

---

[4] *See State v. Hendrickson*, 814 S.W.2d 609, 613 (Mo.App. 1991); *State v. Brown*, 716 S.W.2d 6, 9 (Mo.App. 1986); *State v. Bailey*, 645 S.W.2d 211 (Mo.App. 1983); *State v. Dudley*, 617 S.W.2d 637, 639 (Mo.App. 1981); *State v. Castaldi*, 386 S.W.2d 392, 396 (Mo. 1965); and *State v. Odum*, 351 S.W.2d 10, 14 (Mo. 1961).

(Mo.App. 2005). The instant case, however, is quite different from a scenario in which the *only* evidence of guilt was a piece of abandoned mail found on the roadside. **Waller**, 163 S.W.3d at 596.

The totality of the following factual circumstances, each supported by direct evidence, supports a reasonable inference that Defendant was the person who set fire to Reyes's van: Defendant lived across the street from Reyes with his brother, who was charged with felony offenses for threatening Reyes with a gun. Defendant was emotionally distressed over these charges against his brother. While his brother was in jail awaiting trial on these charges, Defendant threatened Reyes with "violent consequences" if he did not change his testimony. Two days after Defendant threatened Reyes with "violent consequences," an accelerant was used to intentionally set fire to Reyes's minivan. Approximately two to three hours after the van fire was started, police found Defendant in his truck on the side of the road just a mile and a half from Reyes's burned van looking "like he was asleep or passed out in the driver's seat" and with an almost empty accelerant container. Defendant gave an implausible explanation as to why he was there, in that Defendant stated that he had only been there half an hour because his truck overheated, yet the hood of the truck was cool to the touch as though it "had been sitting there a while." At trial, Defendant testified to additional events that the jury could have found to be implausible and indicative of a consciousness of guilt, in that Defendant testified that he was camping with four or five others that night in four different places—either Fairview, Wheaton, Hoberg, or Pioneer—and left the campsite at four different times—either 5:00, 5:30, 6:00, or 6:30.

Because a reasonable juror could have concluded from this circumstantial evidence, which carries the same weight on appeal as direct evidence, **Jones**, 296 S.W.3d at 509, that Defendant was the person who set fire to Reyes's van, the evidence was sufficient to support his conviction. Defendant's second point is denied.

### Decision

Defendant's convictions are affirmed.

GARY W. LYNCH, J., Opinion Author

NANCY STEFFEN RAHMEYER, J., concurs

WILLIAM W. FRANCIS, JR., J., concurs