

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD82681 |
| | ) | |
| v. | ) | OPINION FILED: August 25, 2020 |
| | ) | |
| NOAH ABRAM KELLIKER, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
The Honorable Robert L. Koffman, Judge

Before Division Two: Mark D. Pfeiffer, Presiding Judge, Alok Ahuja, Judge and
Gary D. Witt, Judge

Noah Kelliker ("Kelliker") was convicted in the Circuit Court of Pettis County after

a jury trial of one count of felony murder in the second degree in violation of section

565.021 ("Count I"); one count of unlawful use of a weapon in violation of section 571.030

("Count II"); and one count of armed criminal action in violation of section 571.015

("Count III").[1] Kelliker was sentenced to life in the Missouri Department of Corrections

on Count I, 15 years on Count II, and 15 years on Count III with all sentences running

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as updated through January 9, 2018, unless otherwise specified.

concurrently. On appeal, Kelliker asserts the evidence is insufficient to support his conviction under Count II, which was the predicate offense for both Counts I and III. Because there was sufficient evidence to support the jury's verdict that Kelliker was guilty of unlawful use of a weapon, we affirm.

## Procedural and Factual Background[2]

Kelliker lived in Sedalia with his uncle, Carl Jones ("Jones"), in January 2018. While Kelliker was living with Jones, Jones overheard Kelliker talking on the phone about getting "easy money" from a man named Joe Nebergall ("Nebergall"), the victim's boyfriend. During a subsequent conversation between Jones and Kelliker, Kelliker stated that Nebergall was a "[drug] dealer or had money that that can be taken" and that it would be easy to steal from Nebergall.

On the afternoon of January 9, 2018, Kelliker called his ex-girlfriend, Allison Wyrick ("Wyrick"). Kelliker told Wyrick that he was in Sedalia and wanted to see her. Wyrick drove to Sedalia and picked up Kelliker. After they talked for a while, Kelliker asked Wyrick to take him to a trailer park over by the movie theater and gave her directions. Upon arriving at the trailer park, Kelliker exited the vehicle, but Wyrick remained in the car and looked at her phone. While on her phone and "not really paying attention to what was happening," she heard two or three gunshots. Wyrick looked around for the source of the shots or anyone running away but did not see anything. Kelliker returned to the car and told her to leave. Wyrick asked Kelliker what he was doing, but Kelliker did not give

---

[2] This Court views the facts in the light most favorable to the underlying jury verdict. *State v. Taylor*, 134 S.W.3d 21, 24 (Mo. banc 2004).

an answer. He then asked her to take him to McDonald's where he ordered food. After leaving McDonald's, she dropped Kelliker off in the same location where she had picked him up.

At 8:30 P.M. that same day, the Pettis County Sheriff's Office received a report of shots fired in the area of the Western View Estates Trailer Park ("Western View"). A Sheriff's Deputy drove around the area for several minutes but left because no one was in the area and nothing seemed out of the ordinary. Around 10:00 P.M. on the same night, dispatch received another call reporting that the caller returned home and found Cassandra White ("White") bleeding inside their mobile home at Lot 23 in Western View. While approaching Lot 23, a deputy observed that the front glass door was shattered and there was glass on the doorstep. The front door to Lot 23 was open, and Nebergall was just inside the doorway holding a towel to the back of White's head and said "she's bleeding." The officer observed White also had a stomach wound. White did not have a pulse and was not breathing.

The officer performed CPR until paramedics arrived. White was pronounced dead at the scene. An autopsy revealed that White sustained three bullet wounds. One went through her left forearm, one passed through her lower abdomen on the left side of her body, and one entered the back of her head causing "catastrophic damage" to White's brain. White also had a "stippling" wound on her face indicating that another bullet was fired near her eye but narrowly missed her face. A bullet hole was found going through the blinds and window behind where White had been. The official cause of death was listed as the gunshot wound to White's head.

3

Deputy Chancellor canvassed the area for witnesses, and no one identified seeing Kelliker at Western View. Two nine-millimeter shell casings were recovered near the entrance to White's mobile home. One casing was silver and the other was brass. In all, three bullet holes were found in the mobile home's front door, and a fourth bullet traveled through the mobile home's window and into a neighboring mobile home.

Kelliker moved out of Jones's home the day after the crime occurred. In the days following the shooting, the Pettis County Sheriff's Office received information regarding an anonymous tip about a male that had been involved in a shooting in Sedalia, which included details of the murder that were not publicly available. That tip led them to Kelliker as a possible suspect and it was determined he was staying at the Master's Ranch ("Ranch") in Oregon County. The Oregon County Sheriff's Office took Kelliker into custody at the Ranch.

Kelliker denied having a vehicle at the Ranch. An officer located a red vehicle with a flat tire in the parking lot at the Ranch, which was determined to belong to Kelliker. A handgun was in plain view in the back seat of the car. The car was impounded, and during a search pursuant to a search warrant, the gun was seized. The gun was a Ruger 9 mm caliber (the same caliber used in the homicide) and the gun's magazine had a capacity of seventeen bullets. The gun's magazine contained thirteen bullets consistent with four rounds being fired from it, and the bullets in the magazine alternated between brass-colored casings and silver-colored casings every other round. A Wal-Mart receipt was also recovered from the vehicle from a store located in Sedalia and dated a day or two before

4

the murder. Additional 9 mm ammunition, .223 rifle ammunition, marijuana, and digital scales were also found in the car.

During an interview following his arrest, Kelliker stated that he knew something about the shooting but did not reveal any additional information. In a subsequent interview, Kelliker said that he did not remember anything from the night of the shooting because he had taken Xanax and had not eaten that day. Kelliker remembered being picked up by Wyrick and taken to a friend's house, then going to McDonald's, then returning to the friend's house at some point. When questioned about the possibility of him being at the trailer on the night of the shooting, Kelliker did not deny it. Kelliker also did not deny having a gun or being with Wyrick on the day of the shooting. Kelliker stated that he "spoke with [Wyrick]" and "whatever she said is what happened." Kelliker confirmed that he knew Nebergall.

Kelliker was charged with three offenses in connection with White's death. The jury found Kelliker guilty on all three counts, and the trial court sentenced Kelliker to incarceration for life on Count I, 15 years on Count II, and 15 years on Count III, and ordered the sentences to run concurrently. This timely appeal followed.

## Standard of Review

When reviewing the sufficiency of evidence supporting a criminal conviction, the Court gives great deference to the trier of fact. Appellate review "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." In applying this standard, "the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary."

5

*State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009).

## Discussion

Kelliker raises one point on appeal arguing the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence and in imposing sentence on Kelliker on Count II in that the evidence did not prove beyond a reasonable doubt that Kelliker committed the offense of unlawful use of a weapon. Kelliker further argues that because the offense of unlawful use of a weapon was the predicate offense for Counts I and III, his convictions under those Counts must also be reversed. We disagree.

Circumstantial evidence can meet the required burden of proof in a criminal trial. "If a jury is convinced beyond a reasonable doubt, so long as the evidence meets the minimal appellate standard required by due process, we need not disturb the result simply because the case depended wholly, mostly, or partially upon circumstantial proof." *State v. Grim*, 854 S.W.2d 403, 406 (Mo. banc 1993). For sufficiency of evidence in a circumstantial case, the relevant inquiry is not "whether the court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011).

"[A]n inference is a conclusion drawn by reason from facts established by proof; a deduction or conclusion from facts or propositions known to be true." *State v. Waller*, 163 S.W.3d 593, 595 (Mo App. W.D. 2005). Essentially, this Court will find that the evidence is sufficient if the inference that Kelliker committed Count II is reasonable and the

underlying facts that support the inference have been proven true. Conversely, the Court "will not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences." *State v. Langdon*, 110 S.W.3d 807, 811-12 (Mo. banc 2003).

"A person commits the offense of unlawful use of weapons if he or she knowingly shoots a firearm at any building or habitable structure." Section 571.030.1(9). Kelliker does not challenge whether someone knowingly shot a firearm into a habitable structure. Kelliker asserts a reasonable juror could not find from the evidence that Kelliker was the person who actually shot into the mobile home. Specifically, Kelliker asserts that a reasonable juror could not make three necessary inferences which would be required to sustain a conviction based on the evidence: (1) that Kelliker was present at the scene of the crime; (2) that Kelliker fired a weapon at the scene; and (3) that the gun obtained from Kelliker's vehicle was the murder weapon; and therefore, the State did not meets its burden to establish guilt beyond a reasonable doubt for Count II.

We address each in turn. Kelliker first asserts that the State did not meet its burden of adducing sufficient evidence to permit a reasonable inference that Kelliker was at the scene of the crime. Kelliker argues that the evidence merely supports an inference that he was at a trailer park on the day that the shooting took place but not an inference that he was at Western View at the time of the murder. However, the evidence is clear that shortly before the murder, Kelliker was overheard on the phone discussing robbing Nebergall, who lived in the exact mobile home where the murder occurred. On the night of the murder, Wyrick drove Kelliker to a trailer park, and while she and Kelliker were there multiple gunshots were fired. The Pettis County Sheriff's Department received reports of multiple

gunshots being fired in that location on that same day at or near the same time. In addition, expended bullet casings found at the scene were both silver colored and brass colored, consistent with the unusual way the bullets were fed into the magazine of the gun found in Kelliker's automobile a few days after the shooting. From these facts alone, a juror could infer that Kelliker was present at Western View on the night of the murder .

The fact that Wyrick cannot verify exactly which trailer park she took Kelliker to does not make the inference mere supposition.[3] In *State v. Chaney*, 967 S.W.2d 47, 54 (Mo. banc 1998), the Court held that the State does not have to "disprove every reasonable hypothesis except that of guilt." The State did not have the burden to disprove Kelliker had not been taken to every other trailer park in the surrounding area.

Kelliker next asserts that a reasonable juror could not infer that Kelliker fired a gun into the mobile home. In *State v. Plopper*, 489 S.W.3d 848, 850 (Mo. App. S.D. 2016), the defendant told the victim that there would be "violent consequences" if the victim did not change his testimony at an upcoming trial of the defendant's brother. Two days later, someone used an accelerant to set fire to the victim's vehicle. *Id.* A few hours later, officers found the defendant asleep or passed out in a truck outside of the victim's city with a nearly empty five gallon can of gasoline in the back of his truck. *Id.* When questioned, the defendant gave varying and inconsistent accounts of his whereabouts that day. *Id.* The court affirmed the defendant's conviction for tampering because a reasonable juror could

---

[3] A supposition is "a conjecture based on the possibility that a thing could have happened." *State v. Putney*. 473 S.W.3d 210, 216 (Mo. App. E.D. 2015).

have concluded from this circumstantial evidence that the defendant was the person who set fire to the victim's vehicle. *Id.*

Like the threatening statements in *Plopper*, Kelliker made comments indicating his intention to steal money from Nebergall, White's co-habitant. And, while Plopper had an empty gasoline can that could have contained the accelerant used to set the fire, Kelliker's vehicle contained a nine-millimeter handgun consistent with the weapon used in White's murder. The gun had 13 rounds in the magazine with a total capacity of 17, consistent with four rounds having been fired from that gun. The bullets in the magazine were stacked in an unusual way with bullets alternating between a bullet with a brass casing and then a bullet with a silver casing, consistent with the shell casings found at the crime scene.

Kelliker further argues that "mere presence at the scene of a crime is not enough to show affirmative participation," *State v. Dixson*, 546 S.W.3d 615, 619 (Mo. App. E.D. 2018), but Kelliker's presence at Western View is not the only evidence that demonstrates Kelliker's guilt. The day after the murder, Kelliker fled from Pettis County to Oregon County. *See State v. Hosier*, 454 S.W.3d 883, 895 (Mo. banc 2015) ("Evidence of flight is admissible to show consciousness of guilt."). Further, during his arrest, Kelliker lied to officers about owning a vehicle and his nine-millimeter handgun was later found in his vehicle in the parking lot of the place where he was staying. Like in *Plopper*, Kelliker provided varying and inconsistent accounts of what he did on the day of the murder during his interviews with law enforcement, including his statement that due to drug use and lack of food he had no recollection of the events of that day but officers could rely on what Wyrick told them. When taken together, these facts support an inference that Kelliker had

9

a consciousness of guilt, which supports an inference that Kelliker fired a weapon into the mobile home at Western View on the day of the murder. Therefore, a reasonable juror could infer that Kelliker was the individual who fired into the trailer.

Finally, Kelliker argues a reasonable juror could not infer that the gun recovered from Kelliker's vehicle was the murder weapon asserting that the amount of time between the shooting and the gun's recovery makes any inference that they are the same weapon more forced and speculative. Kelliker relies on *State v. Allen*, 536 S.W.3d 241, 247 (Mo. App. E.D. 2017), where the court held that it was impermissible to infer that a defendant had operated a stolen vehicle in Missouri even though the defendant had sole possession of the vehicle in Arkansas. A car was stolen from Perryville, Missouri in February 2014. *Id*. at 242. Five or six days later in Knobel, Arkansas, the defendant entered into an agreement with his neighbors to trade the stolen truck for the neighbors' Jeep. *Id.* A few days later, Arkansas law enforcement seized the stolen pickup from the defendant's neighbors, and the neighbors relayed that they received the stolen pickup from the defendant. *Id.* The defendant was arrested and charged in Missouri with first degree tampering. *Id.* at 243. The testimony indicated that the truck was stolen in Missouri, but no one could identify the person who stole it. *Id*. at 245. Other testimony and evidence explained the transactions that took place in Arkansas, but no evidence indicated that the defendant had been in Missouri between the time when the truck was stolen and when it was seized in Arkansas. *Id*. The court held that unexplained possession of recently stolen property raises a permissible inference of guilt in cases of burglary or stealing, but not in

10

cases of tampering. *Id.* at 246-47. Because the State could not establish that the defendant had stolen the truck in Missouri, the defendant's conviction was overturned.

The State did not have the burden to prove that the gun recovered from Kelliker's car was in fact the weapon used in this crime, however, a juror could infer that the weapon in Kelliker's possession was the murder weapon because the Ruger recovered from Kelliker's vehicle was a nine-millimeter caliber, had only thirteen of a possible seventeen rounds in the magazine, and the magazine contained bullets loaded in an unusual fashion of alternating between silver and brass casings. When combined with the facts that a silver and brass shell casing were recovered from the scene and that four shots were fired during the commission of the offense, a reasonable juror could conclude that the gun recovered in Kelliker's car was the gun used to kill White. However, unlike in *Allen*, Kelliker's possession of the handgun is not the sole piece of evidence tying him to the crime. A few days before the crime, Kelliker was overheard speaking on the phone about robbing Nebergall, who lived in the mobile home where the crime occurred. As stated previously, Kelliker displayed consciousness of guilt by fleeing to another county and providing inconsistent accounts of his actions that day. He lied about owning a vehicle, when his car was in the parking lot where he was taken into custody and had the weapon in the back seat. Further, both Kelliker and Wyrick placed Kelliker in a trailer park in Sedalia on the day of and near the time of the crime where shots were fired.

Given the totality of the evidence, we conclude that a reasonable juror could find beyond a reasonable doubt that Kelliker did commit the offense of unlawful use of a weapon.

11

## Conclusion

We affirm Kelliker's convictions and sentences.

_____
Gary D. Witt, Judge

All concur