STATE of Missouri, Plaintiff–Respondent,

v.

Tammy Elaine LOUGHRIDGE, Defendant–Appellant.

No. SD 31877.

Missouri Court of Appeals, Southern District, Division 2.

Feb. 25, 2013.

Rosalynn Koch of Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Andrew C. Hooper, Asst. Atty. Gen., of Kansas City, MO, for Respondent.

JEFFREY W. BATES, J.

Following a bench trial, Tammy Elaine Loughridge (Defendant) was convicted of two counts of endangering the welfare of a child in the first degree, a class C felony. *See* § 568.045.[1] The trial court sentenced Defendant to serve concurrent five-year sentences.[2] On appeal, Defendant challenges the denial of her motion for judgment of acquittal at the close of all of the evidence. She contends the evidence was insufficient for the trial court to reasonably find that Defendant knowingly created a substantial risk to the health of her minor children when she forced them to undress and photographed them with their genitals exposed. We affirm the judgment of the trial court.

**Standard of Review**

In a court-tried criminal case, the court's findings have the force and effect of a jury verdict. Rule 27.01(b); *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). Accordingly, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same. *State v. Fraga,* 189 S.W.3d 585, 586 (Mo.App.2006). The function of the reviewing court is not to reweigh the evidence, but only to determine whether the judgment is supported by sufficient evidence. *State v. Burse,* 231 S.W.3d 247, 251 (Mo.App.2007). Thus, our role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact reasonably could have found the defendant guilty. *State v. Vandevere,* 175 S.W.3d 107, 108 (Mo. banc 2005). "The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime." *State v. Howell,* 143 S.W.3d 747, 752 (Mo.App.2004). This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Liberty,* 370 S.W.3d 537, 542–43 (Mo. banc 2012). When reviewing a challenge to the sufficiency of the evidence, an appellate court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence. *Id.* at 543. All contrary evidence and inferences are disregarded. *Id.*

**Factual Background**

Viewing the record in accordance with the applicable standard of review, the fol-

1. All statutory references are to RSMo Cum. Supp. (2008) unless otherwise specified. All rule references are to Missouri Court Rules (2012).

2. Defendant was also charged by information with one count of invasion of privacy in the second degree. *See* § 565.253(1). The trial court did not find Defendant guilty of that offense.

lowing evidence was presented at trial. In June 2009, Defendant resided in a home with her two sons, R.C. and J.L., and a friend named Bobbie Jo Scheel (Scheel). R.C. was eleven, and J.L. was eight. Defendant's ex-boyfriend, Bruce Duncan (Duncan), also sometimes stayed there.

Defendant, who was angry at Duncan, wanted to take photographs to put in his truck so he would get sent to prison. Scheel assisted Defendant in carrying out that plan. Defendant told R.C. and J.L. that she was going to take pictures of them. She got her camera, spread out a sheet on her living room floor and told R.C. and J.L. to remove their clothes. Defendant took photographs of R.C. and J.L. while they were "touching each other sexually" with their genitals exposed.[3] Defendant and Scheel told the boys what to do. R.C. got angry and said "No" because he did not want Defendant to take the pictures. It bothered him to be photographed naked. Eventually, however, the children complied and did what they were told to do.

Both boys were receiving counseling services from Dina Vitoux (Vitoux), a licensed clinical social worker. Her primary specialty was working with child sexual abuse victims. In 2009, Vitoux had individual counseling sessions with R.C. and J.L. two or three times a month. At one session in October 2009, R.C. started to say something and then stopped because he was afraid. After receiving reassurance from Vitoux, R.C. said that Defendant and Scheel had taken pictures of R.C. and J.L. touching each other sexually while naked. In March 2010, J.L. also told Vitoux about the same incident. J.L. was "very fearful and uncomfortable" while talking about those events. In Vitoux's

opinion, the June 2009 incident harmed the children by adversely affecting their mental health. Each child was acting out sexually and had difficulty learning appropriate rules of sexual touching. J.L. was confused and fearful that an adult about whom he cared might ask him to do something he was not supposed to do. He was diagnosed as having ADHD, and he suffered from educational delays and speech issues. After R.C. disclosed that incident to Vitoux, his inappropriate sexual behaviors "escalated greatly" and resulted in him being taken out of his foster home and placed in residential care. He was diagnosed as having post-traumatic stress disorder and ADHD.

In late October 2009, a sheriff's deputy interviewed Defendant. After the deputy explained what the children had said about the incident, Defendant said she "couldn't recall anything of that nature occurring." She denied ever taking any photographs of her children in the nude. The next day, Defendant asked to speak with the deputy again. This time, Defendant recalled the incident the deputy had described. Defendant said Scheel was the one who took naked pictures of the children. Defendant said "she was uncomfortable with this but she went along with it and stood there while the pictures were being taken."

### Discussion and Decision

On appeal, Defendant contends the evidence is insufficient to support her convictions for violating § 568.045. "A person commits the crime of endangering the welfare of a child in the first degree if ... [t]he person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seven-

---

3. The photographs were never recovered by police. The last place Defendant had seen the photographs was in a shed by her house.

teen years old." § 568.045.1(1). The four elements the State must prove in order to convict a defendant of first-degree child endangerment are: "(1) the defendant engaged in conduct, (2) in so doing, the defendant created a substantial risk to the life, body, or health of a child, (3) the victim was less than seventeen years old, and (4) the defendant acted knowingly with respect to the facts and circumstances." *State v. Short*, 186 S.W.3d 828, 830–31 (Mo.App.2006); *see State v. Osborn*, 318 S.W.3d 703, 712 (Mo.App.2010). Defendant argues that: (1) there was no evidence that taking the photographs created a risk to the children's health, as required by § 568.045; and (2) there was no evidence Defendant was aware the children would be damaged by having such photographs taken of them. We disagree.

■ We first address Defendant's argument that the evidence was insufficient to prove she created a substantial risk to the health of R.C. and J.L. by photographing them naked. Defendant claims that § 568.045.1(1) "specifically relates to physical conditions—by prohibiting actions that create a risk to the life or body of the child." We find no merit in this argument.

■ "The primary rule of statutory interpretation requires this Court to ascertain the intent of the legislature by considering the language used while giving the words used in the statute their plain and ordinary meaning." *Benoit v. Missouri Hwy. and Transp. Comm'n*, 33 S.W.3d 663, 673 (Mo.App.2000); *State v. Carroll*, 165 S.W.3d 597, 602 (Mo.App.2005). "Where the legislative intent is made evident by giving the language employed in the statute its plain and ordinary meaning, we are without authority to read into the statute an intent, which is contrary thereto." *State v. Brushwood*, 171 S.W.3d 143,

147 (Mo.App.2005); *State v. Slavens*, 375 S.W.3d 915, 917 (Mo.App.2012). "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010).

■ The legislature used the word "health" in § 568.045 without providing a statutory definition. In the absence of such a definition, "words will be given their plain and ordinary meaning as derived from the dictionary." *State v. Oliver*, 293 S.W.3d 437, 446 (Mo. banc 2009). "Health" is "the condition of being sound in body, mind, or spirit[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 574 (11th ed.2005). "Health" also is defined as "[t]he state of being sound or whole in body, mind or soul." BLACK'S LAW DICTIONARY 721 (8th ed.2004). As these dictionary definitions illustrate, the plain and ordinary meaning of "health" is broad enough to encompass a person's mental, emotional or psychological condition. Therefore, Defendant's argument that "health" only refers to physical conditions is incorrect. Furthermore, § 568.045 proscribes conduct "that creates a substantial risk to the life, body, or health" of a child. *Id.* The use of the words "life" and "body" plainly refers to the risk of physical harm or injury. Interpreting the additional word "health" in the manner advocated by Defendant would render that term redundant and, therefore, superfluous. This we cannot do, as we are required to interpret the statute in a fashion that gives meaning to each of those three distinct terms. *See Moore*, 303 S.W.3d at 520. For these reasons, we find no merit in Defendant's argument that the word "health" in § 568.045 refers only to a child's physical conditions.[4]

4. Defendant suggests that the rule of lenity

should be applied to limit the definition of

We find additional support for this conclusion in *State v. Hunter*, 939 S.W.2d 542 (Mo.App.1997), which was decided by the eastern district of this Court. Hunter, who had forced six-year-old M.B. to drink a small glass of malt liquor, was convicted of endangering the welfare of a child in violation of § 568.045. On appeal, Hunter challenged the sufficiency of the evidence to support his conviction. *Id.* at 544. The eastern district reviewed the record to determine whether there was any evidence that Hunter's conduct caused a substantial risk to M.B.'s physical or emotional health. Finding none, that conviction was reversed. *Id.* at 544–45. As *Hunter* illustrates, evidence that a defendant's conduct caused a substantial risk to a child's emotional health would be sufficient to support a conviction for violating § 568.045.

In reaching our conclusion, we have considered and rejected Defendant's argument that § 568.045 should be interpreted as Defendant advocates because § 568.060 RSMo Cum.Supp. (2012) was amended to specifically include references to, and statutory definitions for, mental injury and serious emotional injury. Defendant argues that the absence of such features from § 568.045 should preclude the word "health" from including anything except physical conditions. We disagree. While § 568.045 and § 568.060 may overlap to some extent, neither is a subset of the other. *See State v. Dunson*, 979 S.W.2d 237, 243 (Mo.App.1998). Each statute is a separate offense and proscribes different conduct than the other. *Id.* Proof of serious emotional injury to a child is primarily used in § 568.060 to enhance the defendant's punishment by elevating the felony class of the offense. *See* § 568.060.5–.6

RSMo Cum.Supp. (2012). More importantly, "the provisions in another section [of the criminal code] should not be utilized to alter the legislature's intent as apparent from the plain and ordinary language of a criminal statute." *Moore*, 303 S.W.3d at 521. Therefore, Defendant's reliance on § 568.060 to limit the meaning of the term "health" in § 568.045 is unpersuasive. We can discern the legislature's intent from the plain and ordinary meaning of the terms used in § 568.045.

Determining whether a defendant's actions created a substantial actual risk to the health of the child requires "a fact specific determination." *State v. Burrell*, 160 S.W.3d 798, 802 (Mo. banc 2005). Given our decision about how § 568.045 should be interpreted, there was ample evidence from which the trial court could have reasonably concluded that Defendant's actions created a substantial risk to the health of R.C. and J.L. There was testimony that Defendant, with the assistance of Scheel, directed R.C. and J.L. to remove their clothes and touch each other sexually while Defendant took photographs. According to Vitoux, that incident adversely affected the children's mental health and produced diagnosable medical conditions such as post-traumatic stress disorder and ADHD.

█ We next address Defendant's argument that there was insufficient evidence to prove she knowingly created a substantial risk to the health of R.C. and J.L. We begin our analysis by examining § 562.016, which states:

A person "acts knowingly", or with knowledge,

"health" to physical ailments only. "The rule of lenity applies to interpretation of statutes only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what the legislature intend-

ed." *Fainter v. State*, 174 S.W.3d 718, 721 (Mo.App.2005); *State v. Ondo*, 232 S.W.3d 622, 628 (Mo.App.2007). Because that is not the case with § 568.045, Defendant's reliance on the rule of lenity is misplaced.

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

§ 562.016.3 RSMo (2000). "There is no bright line test to determine whether or not a person's actions knowingly create a substantial risk to the health of a child." *Burrell*, 160 S.W.3d at 802. In making this determination, "we look to the totality of the circumstances." *State v. Cole*, 384 S.W.3d 318, 325 (Mo.App.2012). "The mental element of the defendant's knowledge may be proven by direct evidence and reasonable inferences drawn from the circumstances surrounding the incident." *State v. Manwarren*, 139 S.W.3d 267, 272 (Mo.App.2004).

 Viewing the evidence and the reasonable inferences derived therefrom most favorably to the trial court's findings, we find sufficient evidence to prove Defendant knowingly created a substantial risk to the children's health. Defendant's plan was to create photographs that she could use to get Duncan sent to prison. Therefore, she needed photographs depicting something so serious that it would prompt a criminal prosecution of Duncan. To that end, Defendant told the children to disrobe. R.C. got angry and said "No" because he did not want Defendant to take the pictures. Once the children were naked, Defendant required them to touch each other sexually while they were being photographed. The photographs that Defendant took were a form of child pornography.[5] During the first police interview, Defendant denied knowing anything about naked pictures being taken in her living room. During a second police interview the next day, Defendant then changed her story and blamed the incident on Scheel. Defendant admitted that she was present when the photographs were taken and that she was "uncomfortable" with what was happening. "A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein." *State v. Schwartz*, 899 S.W.2d 140, 144 (Mo.App.1995). The trial court could reasonably infer from the foregoing evidence that Defendant was aware her conduct was practically certain to create a substantial risk to the children's mental or emotional health. Ergo, the evidence was sufficient to prove that Defendant acted knowingly. *See State v. Browning*, 357 S.W.3d 229, 235–36 (Mo.App.2012)(because direct proof that a person acted knowingly is often unavailable, that mental state is usually inferred from the circumstances surrounding the incident). Defendant's point is denied, and the judgment is affirmed.

DON E. BURRELL, C.J., and MARY W. SHEFFIELD, J., concur.

---

**5.** The definition of child pornography includes an obscene photograph depicting a minor child engaging in physical contact with another person's unclothed genitals. *See* § 573.010(2)(a).