

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
Respondent, )
)
vs. ) No. SD35407
) Filed: November 18, 2019
CHRISTIA LEIGH BELLIS SPRANO, )
)
Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Jennifer R. Growcock, Circuit Judge

**<u>AFFIRMED</u>**

Christia Leigh Bellis Sprano ("Sprano") was convicted, after a bench trial, of the class C felony of tampering with a victim or attempt to tamper with a victim in a felony prosecution, pursuant to section 575.270.[1] The trial court sentenced Sprano to seven years in prison, but suspended execution of that sentence and placed Sprano on five years of supervised probation. In

---

[1] All references to statutes are to RSMo Cum.Supp. (2005), unless otherwise indicated.

two points, Sprano asserts the trial court erred in overruling her motions for judgment of acquittal as there was no evidence to support the charge of tampering with a victim, and that the State's use of a verdict director provided to the trial court did not contain proper evidentiary requirements, pursuant to MAI-CR 3d 329.87.[2] Finding no merit to Sprano's points, we affirm the judgment of the trial court.

### Facts and Procedural History

Because Sprano challenges the sufficiency of the evidence to support her conviction, we recite the evidence and procedural history relevant to the instant appeal in light of the principle that all factual determinations are deemed to have been resolved in accord with the outcome, and that the trier of facts may credit some, all, or none of the evidence before it. *State v. Morton*, 574 S.W.3d 788, 791 (Mo.App. S.D. 2019). We recite such other information as is necessary for context.

In the summer of 2013, Sprano's boyfriend transported Victim (a familial relation of Sprano) and her two young sons ("the Children") from Montana to a small farmhouse in Missouri where Sprano and her boyfriend lived. There was an explicit understanding that Victim and her children were to stay for the summer, and then Sprano and her boyfriend were to transport them to New Hampshire. They did not.

Instead, between 2013 and 2016, boyfriend subjected Victim and her two children to violent acts of sexual and physical abuse.

---

[2] We note the verdict director was not provided to this Court as part of the record on appeal. A purported copy of the verdict director was, however, included in Sprano's Appendix to her brief. Rule 84.04(h), which directs what should or may be included in the appendix, does not authorize inclusion of evidence outside the record on appeal. *Evans v. FirstFleet, Inc.*, 345 S.W.3d 297, 306 (Mo.App. S.D. 2011). The mere inclusion of documents in an appendix does not make them part of the record on appeal, and the court should not consider documents outside the record. *Id.*

Boyfriend also took Victim's food stamp card and her child support payments, controlling all the money in the household. He forced Victim to sign over temporary guardianship of the Children to him and Sprano using a form he obtained from the internet. Boyfriend threatened to kill Victim, the Children, and anyone who might try and help them escape. Boyfriend sometimes forced Victim to beat her children. Sprano witnessed some of the physical abuse her boyfriend inflicted on Victim, and would sometimes participate.

On March 3, 2016, authorities visited Sprano's home in response to a report that the Children were being abused, at which time boyfriend was arrested as a felon in possession of a firearm.[3] That same evening, the Children were removed from the home and interviewed at the Child Advocacy Center. Victim was also interviewed, but did not disclose boyfriend's abuse as she feared she would get in trouble for the things boyfriend forced her do to the Children.

While the Children were being interviewed, a sheriff's department investigator tried to speak to Victim, but Sprano would interject and speak for Victim.

On Wednesday, April 13, 2015, a hearing was held in family court regarding the Children. Sprano accompanied Victim. A guardian ad litem was appointed for Victim.[4] After the hearing, Victim told Sprano and her mother about the physical and sexual abuse she and the Children had suffered at the hands of boyfriend. Sprano told Victim she did not believe her. Victim's mother called law enforcement.

On April 15, 2016, Victim met with the prosecutor and a trauma counselor to disclose details of the physical and sexual abuse both she and the Children had endured at the hands of

---

[3] Boyfriend had been convicted of a previous sexual offense against a minor.

[4] Victim suffered from a congenital brain disorder.

boyfriend. An immunity agreement was reached between the Victim and the State, whereby the State would not charge Victim with any abuse to the Children that boyfriend forced Victim to commit.

On April 16, 2016, Sprano told Victim that she was afraid she too would be arrested, so she had written Victim a letter and put it in a locked filing cabinet in Sprano's room. Sprano told Victim that if anything happened to her, Victim would have the letter "to go by." The letter instructed Victim to flee and "never look back," "claim the 5th" and "keep your mouth shut," to hand over all of her "documents" to "Dennis" so they could be destroyed, and to take certain items of property with her when Victim left (many of which were evidence in crimes committed against Victim and the Children).

The following day, Sprano was arrested for child endangerment, neglect, and abuse. In a subsequent search of the residence, police found numerous items Victim described as having been utilized in her abuse, and a video of boyfriend sexually assaulting Victim.

On July 15, 2016, Sprano was charged by information with the class C Felony of attempted victim tampering, pursuant to section 575.270, in that on or between April 14, 2016 and April 16, 2016, Sprano "gave a letter to [Victim] telling her to withhold information from authorities and such conduct was a substantial step toward the commission of the crime of victim tampering involving the felony crime of sodomy first degree, and was done for the purpose of committing such victim tampering."

A bench trial commenced on September 24, 2017. Victim testified, along with her counselor, and Lieutenant Shane Duryea, a law enforcement officer with the Greene County Sheriff's Department. Sprano did not testify.

4

The trial court was furnished a verdict directing instruction[5] by the State that was patterned after MAI-CR 3d 329.87. Defense counsel did not object.

The trial court found Sprano guilty as charged, and imposed a seven-year sentence, but suspended the execution of that sentence and placed Sprano on supervised probation for five years with specific conditions. This appeal followed.

In two points on appeal, Sprano asserts the trial court: (1) erred in denying Sprano's motions for judgment of acquittal,[6] and (2) plainly erred in finding Sprano guilty by relying upon the verdict director provided by the State.

---

[5] The verdict director read:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or between April 14, 2016 and April 16, 2016, in the County of Christian, State of Missouri, the defendant gave a letter to [Victim] telling her to withhold information from authorities,
>
> and
>
> Second, that such conduct was a substantial step toward the commission of the offense of victim tampering,
>
> and
>
> Third, that defendant engaged in such conduct for the purpose of committing such victim tampering.
>
> then you will find the defendant guilty of an attempt to commit victim tampering.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> A person commits the crime of victim tampering when he prevents or dissuades or attempts to prevent or dissuade any person who has been a victim of any crime or any person who is acting on behalf of any such victim from:
>
> (1) Making any report of such victimization to any peace officer, or state, local or federal law enforcement officer or prosecuting agency or to any judge;
>
> (2) Causing a complain, [sic] indictment or information to be sought and prosecuted or assisting in the prosecution thereof;
>
> (3) Arresting or causing or seeking the arrest of any person in connection with such victimization.
>
> As used in this instruction, the term "substantial step" means conduct that is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of victim tampering.

[6] Sprano's brief directs us to no such motions, and the record indicates that none were filed. However, as our Supreme Court has indicated, "[n]o rule requires the filing of a motion for judgment of acquittal in a court-tried case." **State v. Claycomb**, 470 S.W.3d 358, 361 n.3 (Mo. banc 2015). The State does not challenge preservation in this respect—if (and to the extent) the implied preservation of Rule 78.07(c) does not survive the mandates of Rule 84.04(e), we exercise our discretion to review it *ex gratia*.

All rule references are to Missouri Court Rules (2019).

## Point I:  Sufficiency of the Evidence

Sprano's first point challenges the sufficiency of the evidence to support her conviction.

> In a court-tried criminal case, the court's findings have the force and effect of a jury verdict.  Accordingly, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same.  Our review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt.  An appellate court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences.  Contrary evidence and inferences are disregarded.  We do not weigh the evidence.  Instead, we defer to the fact-finder's superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony.

*State v. Collins*, 570 S.W.3d 625, 626 (Mo.App. S.D. 2019) (internal quotations and citations omitted).

As an initial matter, Sprano's argument extends beyond the scope of her point relied on, in violation of Rule 84.04(e).[7]  The argument attendant to her point (as best as we can discern) is comprised of the following strands:

1. the only inference warranted by the letter is that Sprano's motive was to tell Victim to "claim the 5th";

2. impliedly arguing that the trial court erred because in finding Sprano guilty, the trial court "[]parrot[ed] the statute[]" rather than MAI-CR 3d 329.87;

3. the "criteria used by the court in reaching its verdict failed to include a finding of the victim's name, the crime that made her a victim and the date of the crime[]";

4. there "was simply no evidence that [Victim] was a victim of a charged crime in this case[]";

5. the "court made no finding that [Sprano] **purposefully prevented or dissuaded** [Victim] from assisting in the prosecution of this case[]";

6. "the trial court made no finding that overcame the presumption of a lawful invocation of the privilege against self-incrimination";

---

[7] All rule references are to Missouri Court Rules (2019).

7. "the Fite instruction used by the trial court as a purported attempt to commit the crime of victim tampering was also defective in that the attempt instruction, MAI-CR3D 304.07," requires that "the definition of the object crime . . . appear in the verdict director" and "it was not included in the Fite instruction[.]"

(Emphasis in original).

Some of these claims are sufficiency-of-the-evidence challenges, some are challenges to trial court findings (or their absence), and some are challenges to errors of law. Regardless, these are separate challenges, and must be presented in separate points relied on to be preserved for appellate review. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). *Ex gratia*, we treat what we discern to be the primary thrusts of Sprano's argument.[8]

We observe that none of Sprano's substantial-evidence arguments successfully conform to the analytical sequence set forth in *State v. Finch*, 398 S.W.3d 928, 929 (Mo.App. S.D. 2013):

1. Identify a challenged factual proposition needed to sustain the conviction;

2. Identify all favorable evidence in the record tending to prove that proposition; and

3. Show why such evidence, when considered along with its reasonable inferences, is so non-probative that no reasonable fact-finder could believe the proposition.

*Id.* Rather, Sprano's evidentiary challenges ignore evidence and inferences in favor of her conviction (which we must credit), and rely on evidence and inferences in her favor (which we must ignore). *See id.*

---

[8] This Court's *ex gratia* treatment of Sprano's appeal should not be read as condoning the practice of burying numerous claims in the argument section of a single point relied on. *See Spire Missouri, Inc. v. Public Service Commission of State*, Nos. SD35485 and SD35549 (Consolidated), 2019 WL 1246323, at *7-*11 (Mo.App. S.D. Mar. 15, 2019). Such formulations violate mandatory Missouri Court Rules, and inhibit the efficient and effective disposition of cases on appeal.

The central focus of Sprano's point, and a goodly portion of her argument, is that the evidence only warranted the inference that Sprano intended to tell Victim to "claim the 5th." This premise is unsound—the mere fact that some verbiage in the letter referenced "claim[ing] the 5th" is not decisive,[9] and for that matter, not considered in a substantial-evidence challenge.[10]

Sprano told Victim that she was afraid of being arrested so she had written a letter for Victim and put it in a locked filing cabinet. Sprano told Victim that if anything happened to her, Victim would have the letter "to go by." In the April 14, 2016 letter, Sprano told Victim (in relevant part) to do the following:

> •"Keep your mouth shut, claim the 5th, do whatever you need not to give them evidence of any kind they can use against you. We know you're innocent, but they don't care about that. They are your deadliest enemy!"
>
> •"[E]mpty" Sprano's bank account;
>
> •Take with her several pieces of furniture where acts of abuse occurred;
>
> •"Make <u>sure</u> all paperwork goes to Dennis to be destroyed[]";
>
> •Not to discuss details of Sprano's life with her mother because "[y]ou know how I dislike her meddeling[] [sic]";
>
> •"[R]un as light as you can and buy new stuff. Never look back[.]"

Sprano also took away Victim's cellphone.

From this, the fact-finder could reasonably infer that Sprano intended to discourage or inhibit Victim from speaking with investigators, to abscond with or facilitate the destruction of evidence, and to encourage Victim to travel or hide in such a manner as to make Victim's testimony

---

[9] "The purpose of the victim-tampering law is to criminalize conduct that would deter victims from reporting crimes to which they have been subjected[,]" or in participating in associated proceedings. ***Collins***, 570 S.W.3d at 629. Or, in other words, "to promote orderly administration of justice by proscribing anything which hinders witnesses' willingness to speak the truth before any court or body charged with the enforcement of our laws." ***Id.*** (internal quotation and citation omitted).

[10] *See* ***Finch***, 398 S.W.3d at 929.

8

unavailable to investigators. There is no necessary inference that Sprano's motivation was to encourage Victim to exercise her lawful Fifth Amendment right against self-incrimination—the trial court was under no duty to credit such inference, and did not do so.

Sprano also makes several arguments about the verdict director provided by the prosecutor in this case, and the absence of specific findings Sprano argues necessary for her conviction. These arguments are not raised in her Point I. *See* Rule 84.04(d)-(e). Further, this was a bench-tried case. The trial court is presumed to know and apply the law, and we will presume its findings are in accord with the outcome. *See **Ware***, 447 S.W.3d at 229. Sprano's arguments in this vein are therefore unavailing.[11] *See **id.***

For all of these reasons, Sprano's Point I is denied.

### *Point II: Plain Error*

In her second point, Sprano argues as follows:

The trial court plainly erred in finding Appellant guilty by relying upon the verdict director supplied by the State because the State's verdict director omitted critical evidentiary requirements contained in MAI-CR3d 329.87[12] that must be satisfied

---

[11] Sprano further argues that there was no evidence that Victim "was a victim of a charged crime in this case." This is not a requirement under section 575.270.2—rather it is only necessary that the tampering victim was the victim of "any crime" established by the evidence. **State v. Baldwin**, 507 S.W.3d 173, 177 (Mo.App. W.D. 2017); **State v. Owens**, 270 S.W.3d 533, 537-38 (Mo.App. W.D. 2008). Such was demonstrated by the evidence in this case.

[12] MAI-CR 3d 329.87 reads:

(As to Count _____, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that [*name of victim*] was the victim of the crime of [*name of crime*] (that occurred on or about [*date*]) (that was charged as a felony on or about [*date*]), and

(Second, that [*name of person*] was acting on behalf of [*name of victim*], and

(Second) (Third), that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant [*Briefly describe what defendant said or did.*], and

(Third) (Fourth), that (by) (in) so doing, the defendant purposely prevented or dissuaded [*name of victim or person in paragraph Second*] from [*Insert one of the following. Omit brackets and number.*]

[1]      making any report of such crime to any peace officer, law enforcement officer, prosecuting agency, or judge,

to prove victim tampering under RSMo. § 575.270 in that the State's verdict director did not list the name of the victim, the crime perpetrated against the victim, or the crime that was charged and the date of its filing and these omissions deprived Appellant of her basic right to Due Process of law and resulted in a manifest injustice affecting substantial rights.

We observe that this was a bench-tried case—no verdict director was required. The trial court is presumed to know and apply the law, and there is no indication that the outcome "was based on a misapprehension of the applicable law." **State v. Pierce**, 548 S.W.3d 900, 906 (Mo. banc 2018) (internal quotation and citation omitted). No plain error is demonstrated, and we therefore deny Sprano's Point II.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

GARY W. LYNCH, J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS

---

[2]     (causing a complaint, indictment, or information to be sought and prosecuted) (assisting in the prosecution of a complaint, indictment, or information) in connection with such crime,

[3]     arresting or causing or seeking the arrest of any person in connection with such crime,

[4]     assisting in the prosecution of [*name of defendant in underlying crime*] for the crime of [*name of crime*], then you will find the defendant guilty (under Count ___) of victim tampering.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

[*Insert a definition of the crime of which the person was a victim.*]