

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD37787
)
SEAN M. WOLF, ) **Filed: June 7, 2024**
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Jerry A. Harmison, Judge

**<u>AFFIRMED</u>**

Sean M. Wolf appeals the judgment of the Circuit Court of Greene County ("trial court") convicting him of two counts of attempted tampering with a victim in a felony prosecution and two counts of tampering with a witness in a felony prosecution. *See* section 575.270.[1]  In one point on appeal, Wolf argues the trial court erred by overruling his motions for judgment of acquittal and convicting him of Counts I and II for attempted tampering with a victim because the State failed to prove beyond a reasonable doubt C.G. ("Victim") was a victim of any crime. We affirm the trial court's judgment.

---

[1] All references to statute are to RSMo Supp. 2017, unless otherwise indicated.

**Factual Background and Procedural History**

On April 29, 2021, the State charged Wolf with one count of domestic assault in the second degree, alleging he "knowingly caused physical injury to [Victim] by choking [her], and [Victim] and [Wolf] were family or household members" on or about April 18, 2021. *See* section 565.073. Also on April 29, 2021, the State filed a separate felony complaint charging Wolf with two other counts of domestic assault in the second degree, alleging Wolf choked Victim on or about two other days in April of 2021. The trial court later consolidated the two cases by agreement of the parties.

While in custody in May of 2021 at the Greene County Jail, Wolf called Victim and said, "I need you to call the prosecuting attorney and f[]ing talk to him, and tell him this is all a big misunderstanding."[2] Victim asked whether Wolf wanted her to lie, to which he responded, "Yeah, maybe . . . will you do that for me please?" Wolf also sent several messages to Victim using the Greene County Jail's inmate communication system. These messages included, "u need to talk to the prosecuting att tell thhem this is a mis understanding[,]" "I need u to do that plz I! I am begging u[,]" and "plz u have to do this for men[.]" In another message sent to Victim later that month, Wolf said, "babe i f u prove to me u love me I'll give u the wedding ring u want an the glock u want back plz[.]" He also sent a message to another individual, asking this person to "message her an say if she proves her loyalty to me I'll not only yet Her the wedding ring she deserves but a new glock to be the gift she wants[.]"

---

[2] The quoted phone conversations and messages throughout this opinion have numerous syntax and grammatical errors. We recite them as provided in the evidentiary record, unless otherwise indicated, to retain their original language in lieu of noting each error.

Wolf called Victim again from the Greene County Jail on August 31, 2021, and said, "So listen, if you show up [at court] tomorrow – Show up tomorrow and just tell them that none of that happened like it happened like you said in your statement." He assured Victim she would not get in trouble and continued, "If you don't show up they're gonna file this motion to use your police statements against me, and your police statements are more detrimental than you . . . you know what I'm saying?" Wolf also instructed Victim, "[Y]ou just tell them that you don't remember, that nothing physical happened, it was just an argument . . . . Remember, nothing physical happened."

Following Wolf's jail calls and messages, the State filed an Amended Felony Complaint in the consolidated case, charging Wolf with three counts of domestic assault in the second degree and seven counts of attempted tampering with a victim. It later dismissed the three domestic assault charges at a preliminary hearing. The State filed a separate Amended Felony Information on June 13, 2022, charging Wolf with four counts of attempted tampering with a victim for attempting to dissuade Victim from assisting with the State's prosecution through messages (Counts I, III, and IV) and during a phone call (Count II). Wolf's case proceeded to a bench trial on June 17, 2022.

At trial, the State moved to amend its amended felony information again by interlineation. The State sought to correct a "typo" in Counts III and IV by changing the allegations from attempted tampering with a victim to tampering with a witness, while still designating Victim as the witness at issue. The trial court granted the State's request over Wolf's objection. The trial court found Wolf guilty of all four counts after considering the State's evidence, and this timely appeal followed.

**Point on Appeal**

Standard of Review

In a court-tried criminal case, the court's findings have the force and effect of a jury verdict. Rule 27.01(b); ***State v. Crawford***, 68 S.W.3d 406, 408 (Mo. banc 2002). "Accordingly, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same." ***State v. Loughridge***, 395 S.W.3d 605, 607 (Mo. App. [S.D.] 2013). Our review of sufficiency of the evidence is limited to "whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." ***State v. Lammers***, 479 S.W.3d 624, 632 (Mo. banc 2016). An appellate court "considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences. Contrary evidence and inferences are disregarded." ***Id.*** (citation omitted). We do not weigh the evidence. ***State v. Claycomb***, 470 S.W.3d 358, 362 (Mo. banc 2015). Instead, we defer to the fact-finder's "superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." ***State v. Lopez-McCurdy***, 266 S.W.3d 874, 876 (Mo. App. [S.D.]2008).

***State v. Collins***, 570 S.W.3d 625 (Mo. App. S.D. 2019).

**Analysis**

*Multifarious Point*

Criminal defendants appealing their conviction must present a brief "contain[ing] the material prescribed by Rule 84.04 and Rule 84.06." ***State v. Vitabile***, 553 S.W.3d 429, 430 (Mo. App. S.D. 2018) (quoting Rule 30.06(a)).[3]  Accordingly, the points relied on must substantially follow the template provided under Rule 84.04(d).  ***Id.***  "Central to the formation of a brief are an appellant's points relied on."  ***Lexow v. Boeing Co.***, 643 S.W.3d 501, 505 (Mo. banc 2022). Because Rule 84.04(d) specifically provides a template for points relied on, there is no excuse for failing to submit an adequate point.  ***State v. Mace***, 593 S.W.3d 103, 104 (Mo. App. S.D. 2020).  Wolf's point relied on fails to comply with Rule 84.04(d).

---

[3] All rule references are to Missouri Court Rules (2024).

"Rule 84.04(d) requires each point relied on to identify a single claim of reversible error, concisely state the legal reasons for that claim of error, and summarily explain why the stated legal reasons support the claim of error." *State v. Minor*, 648 S.W.3d 721, 744 (Mo. banc 2022) (Fischer, J., concurring).

> The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error* ], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Rule 84.04(d). "Multiple claims of error in one point relied on render the point multifarious and violate Rule 84.04 . . . ." *State v. Clark*, 503 S.W.3d 235, 237 (Mo. App. W.D. 2016) (internal quotations and citation omitted). A multifarious point preserves nothing for appellate review and is subject to dismissal. *State v. Agee*, 350 S.W.3d 83, 97 (Mo. App. S.D. 2011).

> Instead of following the directive of Rule 84.04(d), Wolf's Point I reads:

> The trial court erred in overruling Mr. Wolf's motions for judgment of acquittal, making findings of guilt for attempted tampering with a victim, section 575.270, *and entering judgment and sentence on Counts I and II*, in derogation of Mr. Wolf's right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that, despite that the trial court took judicial notice of an April 28, 2021, "original felony complaint" allegedly charging Mr. Wolf with second-degree domestic assault, *where respondent neither identified in which cause that complaint was filed or proffered that complaint as a trial exhibit*, respondent failed to prove beyond a reasonable doubt [Victim] was a victim of any crime, as an essential element of the crime of victim tampering required for conviction under section 575.270.2.

(Emphasis added). Point I, at the most basic level, fails to follow the required template, which requires the State and this Court to piece together what exact trial court alleged error Wolf is claiming on appeal.

Wolf's point is additionally multifarious in that he challenges the sufficiency of the evidence supporting "two separate convictions" within a single point. *State v. Glaze*, 611 S.W.3d 789, 794 n.6 (Mo. App. W.D. 2020); *State v. Hitchcock*, 585 S.W.3d 378, 385 n.6 (Mo.

App. S.D. 2019). Though Wolf's convictions on Counts I and II are for the same offense –
attempted tampering with a victim – and based on substantially similar facts, recurrent reminders
from Missouri's appellate courts make clear that appellants from criminal convictions must focus
their points on appeal to challenging one conviction per point. *See*, *e.g.*, ***State v. Dodd***, 637
S.W.3d 659, 666 (Mo. App. W.D. 2021) ("In challenging sufficiency of the evidence to support
the convictions for all seven charges, involving multiple victims which occurred at separate
times in a single point, [the defendant's] first point is multifarious."); *see also* ***Hitchcock***, 585
S.W.3d at 385 n.6 ("[The defendant's] Points I and II are multifarious in that they each purport to
challenge the evidentiary sufficiency of all of his convictions . . . ."); ***State v. Leonard***, 490
S.W.3d 730, 736 (Mo. App. W.D. 2016) (stating similar); ***State v. Marrone***, 292 S.W.3d 577,
579 (Mo. App. S.D. 2009) (stating similar).

Wolf compounds the multiplicity of his argument under Point I by offering two,
independent reasons for reversible error: The State "neither" identified the case file for its
original complaint nor offered the original complaint as an exhibit. *See* ***Fowler v. Missouri
Sheriffs' Ret. Sys.***, 623 S.W.3d 578, 582-83 (Mo. banc 2021) ("[P]oint relied on is multifarious
in violation of Rule 84.04 because it groups together multiple, independent claims.").

Some courts, when faced with multifarious points on appeal, have charitably
reformulated the arguments to reach their merits. *See*, *e.g.*, ***Glaze***, 611 S.W.3d at 794 n.6
(reviewing one deficient point on appeal *ex gratia*); *see also* ***Hitchcock***, 585 S.W.3d at 385 n.6
(granting *ex gratia* review of two deficient points). This charity follows the judicial preference
of deciding cases on their merits when an argument, though made in violation of Rule 84.04, is
nonetheless understandable. ***Leonard***, 490 S.W.3d at 736-37. Because the State does not raise
an issue with understanding Wolf's point on appeal, his convictions for Counts I and II are for

6

the same crime but on separate instances, and the State and this Court understand that Wolf's claiming there was insufficient evidence to prove beyond a reasonable doubt that Victim was a "victim" for purposes of proving the attempted tampering with a victim charges, we choose to review Wolf's Point I *ex gratia* despite the violations of Rule 84.04(d).

*The evidence was sufficient to support Wolf's convictions on Counts I and II for attempted tampering with a victim.*

In his sole point on appeal, Wolf argues the trial court erred in overruling his motions for judgment of acquittal and convicting him of both Counts I and II, attempted tampering with a victim, because the evidence was insufficient to prove beyond a reasonable doubt that Victim was a victim of a crime, an essential element of the crime of victim tampering under section 575.270. We disagree.

A person commits the offense of attempted tampering with a victim if:

(2) He or she purposely prevents or dissuades or attempts to prevent or dissuade any person who has been a victim of any crime or a person who is acting on behalf of any such victim from:
(a) Making any report of such victimization to any peace officer, state, local or federal law enforcement officer, prosecuting agency, or judge;
(b) Causing a complaint, indictment or information to be sought and prosecuted or assisting in the prosecution thereof;
(c) Arresting or causing or seeking the arrest of any person in connection with such victimization.

Section 575.270.1(2). "'Victim' means any natural person against whom any crime is deemed to have been perpetrated or attempted[.]" Section 575.010(11). "The purpose of the victim-tampering law is to criminalize conduct that would deter victims from reporting crimes to which they have been subjected." **Collins**, 570 S.W.3d at 629. "'[T]he State must prove that the target of tampering was in fact the victim of a crime' and that requirement applies even when the defendant has been charged with attempted victim tampering." **Seals v. State**, 551 S.W.3d 653,

7

659 (Mo. App. S.D. 2018) (quoting *State v. Owens*, 270 S.W.3d 533, 538 (Mo. App. W.D. 2008)).

We conclude the State presented sufficient evidence for a reasonable trier-of-fact to find Wolf guilty of attempted tampering with a victim in that the target of the tampering was in fact the victim of a crime. Count I of the Amended Felony Information specifically alleged:

> [T]hat on or between May 02, 2021, and May 03, 2021, [Wolf] purposefully attempted to dissuade [Victim], a victim of the offense of Domestic Assault 2nd Degree, that was charged as a felony on or about April 28, 2021,[4] from assisting in the prosecution of a complaint, indictment, or information, and such conduct was a substantial step toward the commission of the crime of victim tampering and was done for the purpose of committing such victim tampering, by messaging [Victim].

Count II of the Amended Felony Information specifically alleged:

> [T]hat on or about May 03, 2021, in the County of Greene, State of Missouri, [Wolf] purposely attempted to dissuade [Victim], a victim of the offense of Domestic Assault 2nd Degree, that was charged as a felony on or about April 28, 2021, from assisting in the prosecution of a complaint, indictment, or information, and such conduct was a substantial step toward the commission of the crime of victim tampering and was done for the purpose of committing such victim tampering, during a phone call.

After opening statement, the State requested the trial court take judicial notice of the original Felony Complaint in Wolf's case "from April 28 of 2021 that shows that on that date the defendant was charged in a felony complaint with domestic assault in the second degree." The parties agreed that the trial court could take judicial notice only for the purpose that there was a charge. Ultimately, the trial court took judicial notice of the felony complaint "only for that particular purpose" – that Wolf was originally charged with domestic assault in the second

---

[4] In its brief, the State correctly identifies April 29, 2021, as the filing date of the original Felony Complaint for domestic assault in the second degree. Despite the discrepancy between the filing date of the Felony Complaint (April 29, 2021) and how it is identified in the Amended Felony Information (April 28, 2021), all parties seem clear on which felony was charged and discussed as neither party raised this as an issue.

8

degree in the same case before it on trial, which was referenced and connected to the pending charges by the language contained in the Amended Felony Information for Counts I and II.

Further, the State called two witnesses to testify at trial. One witness testified he accessed jail communication information of Wolf, including a disc containing two calls and seven messages, which was admitted into evidence at trial as State's Exhibit 1. The State's second witness was an employee of the prosecutor's office who investigated Wolf's jail communications and the potential victim tampering. This witness described one voice on the recorded jail communications as Wolf and another as a female voice. This witness determined the phone number dialed was associated with Victim and that Victim was the recipient on the other line of the outbound jail communications.

Those communications, together with the charging information contained in the Amended Felony Complaint and Amended Felony Information, established Victim was a victim of the crime for which Wolf was previously charged and Wolf was purposely trying to prevent or dissuade Victim from "[c]ausing a complaint, indictment or information to be sought and prosecuted or assisting in the prosecution thereof[.]" Section 575.270.2(b). Wolf stated to Victim: "I need you to call the prosecuting attorney and f[]ing talk to him, and tell him this is all a big misunderstanding." Victim asked whether Wolf wanted her to lie, to which he responded, "Yeah, maybe . . . will you do that for me please?" Wolf's messages to Victim using the Greene County Jail's inmate communication system included, "u need to talk to the prosecuting att tell thhem this is a mis understanding[,]" "I need u to do that plz I! I am begging u[,]" and "plz u have to do this for men[.]" In another message sent to Victim later that month, Wolf said, "babe i f u prove to me u love me I'll give u the wedding ring u want an the glock u want back plz[.]" Wolf called Victim again from the Greene County Jail on August 31, 2021, and said, "So listen,

9

if you show up [at court] tomorrow – Show up tomorrow and just tell them that none of that happened like it happened like you said in your statement." He assured Victim she would not get in trouble and continued, "If you don't show up they're gonna file this motion to use your police statements against me, and your police statements are more detrimental than you . . . you know what I'm saying?" Wolf also instructed Victim, "[Y]ou just tell them that you don't remember, that nothing physical happened, it was just an argument . . . . Remember, nothing physical happened."

This foregoing evidence established, and was sufficient to support the reasonable inference, that Victim gave a statement or statements to police that something physical happened between the two of them, not just an argument, and therefore Victim was the victim related to Wolf's domestic assault charges. Moreover, a rational juror could find that Wolf's offer to give her a wedding ring and a "glock" was the attempt to dissuade Victim from assisting in the domestic assault charges filed against him. *See **State v. Hamilton***, 673 S.W.3d 923, 928 (Mo. App. S.D. 2023) (holding where victim stated she would invoke her spousal privilege and would not testify against defendant after defendant offered her $500 if she would "try" and file the necessary form requesting the State drop the domestic assault charges against him, evidence was sufficient to support tampering with a victim conviction). As such, the evidence was sufficient to support Wolf's convictions.

The trial court's judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

10